UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                          :

In re Application of REFINERÍA DE CARTAGENA     :
S.A.S. for an Order Directing Discovery from MASON   :          23 Misc. 455 (JPC)
CAPITAL MANAGEMENT, LLC                        :
Pursuant to 28 U.S.C. § 1782                       :         OPINION AND ORDER
                                            :
-------------------------------------------------------------------- X

JOHN P. CRONAN, United States District Judge:

       On November 28, 2023, Applicant Refinería de Cartagena S.A.S. ("Reficar") filed an *ex parte* application pursuant to 28 U.S.C. § 1782 for leave to take discovery, in the form of subpoenas for documents and for a deposition, from Mason Capital Management, LLC ("Mason") in connection with the restructuring proceedings of two subsidiaries of McDermott International, Inc. ("McDermott"), CB&I UK Limited ("CB&I UK") and McDermott International Holdings B.V., f/k/a Comet II B.V., f/k/a Chicago Bridge & Iron Company N.V. ("CB&I N.V.," and together with CB&I UK, the "CB&I Entities"). These proceedings are pending in England and the Netherlands. On December 4, 2023, Mason requested the opportunity to oppose Reficar's application. The Court granted Mason's request and set a briefing schedule, in accordance with which Mason filed its opposition on December 18, 2023, and Reficar filed its reply on December 26, 2023. On January 3, 2024, the Court granted Mason leave to file a sur-reply, which Mason filed the same day. Since its initial application, Reficar has considerably narrowed the scope of discovery that it is seeking. With Mason still disputing whether any discovery is warranted, as well as objecting to the scope of the discovery sought, the Court heard arguments on Reficar's application on January 5, 2024. The parties were unable to reach agreement on a narrowed scope of discovery following the argument.

For the reasons below, the Court concludes that each of the statutory requirements under Section 1782 has been satisfied.  And in exercising its discretion under the statute, the Court grants Reficar leave to serve its document and deposition subpoenas on Mason as modified by the Court below.

## I.  Factual Background[1]

**A.  The Arbitral Award, the Post-Award Proceeding, and the Chapter 15 Proceeding**

As mentioned, the instant application involves the CB&I Entities' restructuring proceedings in England and the Netherlands.  Reficar's interest in these proceedings arises out of an award (the "Arbitration Award") issued by an international arbitral tribunal on June 2, 2023, under the Arbitration Rules of the International Chamber of Commerce, following arbitration proceedings that lasted seven years.  Stenglein Decl. ¶¶ 2, 3, 4.  Pursuant to the Arbitration Award, the CB&I Entities jointly owe Reficar approximately 937.5 million United States dollars—plus interest on that amount accruing from December 31, 2015, and legal and arbitration costs of

---

[1] In connection with its Section 1782 application, Reficar provided supporting declarations from Patrick Schumann, an English solicitor and a partner at King & Spalding, who represents Reficar in the English restructuring proceedings; Mike Stenglein, a partner at King & Spalding, who represents Reficar in the instant matter and in other related proceedings; and Sebastian van den Berg, a Dutch attorney and a partner at Amsterdam-based law firm RESOR N.V., who represents Reficar in the restructuring proceedings in the Netherlands.  Dkts. 3 ("Schumann Decl."), 4 ("Stenglein Decl."), 5 ("van den Berg Decl.").  In opposing Reficar's application, Mason provided supporting declarations from Michael Martino, co-founder and Principal at Mason; Neil Devaney, an English solicitor and partner at Weil, Gotshal & Manges (London) LLP, who "act[s] for" an ad hoc group of creditors of CB&I UK, of which Mason is a member, in the restructuring proceedings in England; Vincent Vroom, a Dutch attorney and partner at Loyens & Loeff N.V., who represents Mason in the restructuring proceeding in the Netherlands; and Frances Bivens, a member of Davis Polk & Wardwell, who is counsel for Mason in the instant matter.  Dkts. 20 ("Martino Decl."), 21 ("Devaney Decl."), 22 ("Vroom Decl."), 23 ("Bivens Decl.").  And in connection with its reply, Reficar provided supplemental declarations from Messrs. Schumann and van den Berg.  Dkts. 26 ("Schumann Suppl. Decl."), 27 ("van den Berg Suppl. Decl.").  The facts set forth in this section are drawn from these declarations and their accompanying exhibits.  These facts are provided solely for contextual purposes and should not be construed as factual findings.

approximately 58.7 million United States dollars.  *Id.* ¶ 2; *see also* Schumann Decl. ¶ 4.[2]  The CB&I Entities have not paid the award.  Stenglein Decl. ¶ 5.  Instead, on June 8, 2023, they moved to vacate the award in an action in this District before the Honorable Gregory H. Woods; in response, Reficar has filed a cross-petition to confirm the award.  *Id.*; *see Chicago Bridge & Iron Company N.V. v. Refinería de Cartagena S.A.S.*, No. 23 Civ. 4825 (GHW) (S.D.N.Y.), Dkts. 1, 37-38.

On October 10, 2023, the CB&I Entities petitioned the United States Bankruptcy Court for the Southern District of Texas for relief under Chapter 15 of the Bankruptcy Code.  Stenglein Decl. ¶ 7; *see In re CB&I UK Ltd.*, No. 23-90795 (CML) (Bankr. S.D. Tex.) ("Chapter 15 Proceeding"), Dkt. 46.  That same day, the Honorable David R. Jones, United States Bankruptcy Judge, who was covering for the judge presiding over the Chapter 15 Proceeding, *see* Bivens Decl., Exh. B at 2:8-10, the Honorable Christopher M. Lopez, granted the requested relief and entered an order pursuant to which the proceedings before Judge Woods were stayed.  Stenglein Decl. ¶ 7; Chapter 15 Proceeding, Dkt. 46; *see also Chicago Bridge & Iron Company N.V.*, No. 23 Civ. 4825 (GHW), Dkt. 73 ("In light of the stay order entered on October 10, 2023 by the U.S. Bankruptcy Court for the Southern District of Texas, this case is stayed pending further order of the Bankruptcy Court.").  On October 16, 2023, Reficar moved the bankruptcy court to lift its stay order "*only* to allow the" proceeding before Judge Woods "to conclude."  Chapter 15 Proceeding, Dkt. 99 ¶¶ 3, 9; Stenglein Decl. ¶ 8.  Judge Lopez denied Reficar's request on November 29, 2023.  *See* Bivens Decl. ¶ 4; *see also id.*, Exh. B at 47:10-54:16 (transcript of November 29, 2023 hearing).

---

[2] At the hearing on January 5, 2024, Reficar's counsel estimated that the Arbitration Award, including accumulated interest "and some other things," "total[s] about $1.4 billion."  Jan. 5, 2024 Hr'g Tr. at 6:12-15.

**B.      The Foreign Restructuring Proceedings**

Meanwhile, in September 2023, CB&I UK initiated restructuring proceedings in England, and CB&I N.V. initiated restructuring proceedings in the Netherlands.  Stenglein Decl. ¶ 6; Schumann Decl. ¶ 3; Vroom Decl. ¶ 12.  These proceedings were commenced pursuant to a transaction support agreement (the "Transaction Support Agreement"), into which McDermott and the CB&I Entities (together, the "McDermott Group") and "more than 75%, in aggregate, of [McDermott's] secured letter of credit [] providers, funded debt creditors and equity holders" entered on September 8, 2023.  Schumann Decl., Exh. 1 ("McDermott Sept. 8, 2023 Press Release") at 1; *see also id.* ("To implement the [Transaction Support] Agreement, McDermott International Holdings B.V. . . . . will initiate procedures in the Netherlands under the Dutch Act on Confirmation of Extrajudicial Plans . . . .  CB&I UK Limited will initiate a Restructuring Plan under Part 26A of the Companies Act 2006 (UK) in England.").  Among the signatories of the Transaction Support Agreement is a group of fifteen secured creditors and equity holders of the McDermott Group (the "Ad Hoc Group"); Mason, a hedge fund manager, is a member of the Ad Hoc Group.  Devaney Decl. ¶ 6; Martino Decl. ¶ 2; Schumann Decl. ¶ 10.  The Ad Hoc Group engaged Davis Polk & Wardwell as counsel in early 2023 to advise on "restructuring and extension of McDermott's secured indebtedness"—this included, starting in early May 2023, advice regarding the English and Dutch restructuring proceedings.  Martino Decl. ¶¶ 3, 5.

Unlike Mason and the other members of the Ad Hoc Group, Reficar is an *unsecured* creditor of the CB&I Entities; in fact, Reficar is the CB&I Entities' largest unsecured creditor.  Stenglein Decl. ¶ 9.  Under the CB&I Entities' proposed restructuring plans in the two proceedings, Reficar will receive a maximum, contingent payment of four million United States dollars over two years, which Reficar will share with the Contraloría General de la República.  *Id.*  The CB&I

Entities will otherwise be released from their debt under the Arbitration Award. *Id.*; *see also* McDermott Sept. 8, 2023 Press Release at 1 ("Under the terms of the [Transaction Support] Agreement, McDermott will . . . discharge certain legacy legal liabilities."). Reficar thus opposes the CB&I Entities' proposed restructuring plans. Stenglein Decl. ¶ 9; van den Berg Decl. ¶ 11; Schumann Decl. ¶¶ 8, 13.

       1.      **Proceedings in England**

       On September 24, 2023, CB&I UK applied to the English High Court for directions to convene meetings, at which certain of its creditors (the "Plan Creditors"), including both Mason and Reficar, could evaluate CB&I UK's proposed restructuring plan and then vote on a resolution for the plan's approval. Devaney Decl. ¶ 7; *id.*, Exh. 1 at 13 (defining the Plan Creditors). The English court scheduled an initial "Convening Hearing" for September 28, 2023. *Id.* ¶ 7. Before that hearing, on September 26 and 27, 2023, CB&I UK submitted evidence in support of its proposed restructuring plan. *Id.* ¶ 7(a). Also on September 27, 2023, the Ad Hoc Group and other supporting creditors (*i.e.*, senior lenders and issuers that are also parties to the Transaction Support Agreement) submitted their respective skeleton arguments, which outlined their anticipated submissions in support of the plan, as did Reficar and other objecting creditors in opposition to the plan. *Id.* ¶¶ 6, 7(b), 7(c). After it held the Convening Hearing, the English High Court ordered seven separate meetings for each class of the Plan Creditors to consider the restructuring plan. *Id.* ¶ 8. Under Part 26A of the UK Companies Act 2006, creditors must be grouped into classes "with other creditors whose rights are not so dissimilar as to make it impossible for them to consult together with a view to their common interest." *Id.* Accordingly, Reficar, as an unsecured creditor, is in a different group from members of the Ad Hoc Group, which hold secured debt, and thus the two will attend separate plan meetings. *Id.*

Pursuant to the scheduling order for the English proceedings, Reficar filed and served its evidence in response to CB&I UK's evidence on November 23, 2023. *Id.* ¶ 14. The deadline for CB&I UK and the supporting creditors to serve their evidence in reply was December 21, 2023. *Id.* ¶ 13(b). Several procedural steps remain in the English proceedings. First, the seven meetings for each class of Plan Creditors must be held. *Id.* ¶ 17.[3] Moreover, a meeting of experts will be held before January 12, 2024. *Id.* ¶ 13(c). And finally, the Sanction Hearing, at which the English High Court will consider whether to approve the restructuring plan, is scheduled to commence on February 8, 2024. Schumann Decl. ¶ 9; *see* Devaney Decl. ¶ 13(e) ("[T]he Sanction Hearing was re-listed with a time estimate of six days, plus two additional days of pre-reading, commencing on 6 February 2024.").

Before the English High Court may exercise its discretion to approve the restructuring plan notwithstanding Reficar's opposition, it must find that certain prerequisites have been satisfied. Devaney Decl. ¶ 18 (citing Section 901G(4) of the Companies Act 2006); Schumann Decl. ¶ 6. First, no member of a dissenting class may be any worse off than they would be under the "relevant alternative" to the restructuring plan—that is, the most likely alternate outcome for CB&I UK, failing the court's approval of the plan. Devaney Decl. ¶ 18(a); Schumann Decl. ¶ 6(a). Second, a number representing at least 75% in value of a class of creditors or shareholders with a "genuine economic interest" in CB&I UK in the event of the "relevant alternative" must have approved the

---

[3] At each of these plan meetings, a number representing at least 75% in value of those present and voting in person or by proxy must vote in favor of the plan for that class to approve the plan. Devaney Decl. ¶ 17 (citing Section 901F of the UK Companies Act 2006). If that voting threshold is satisfied in at least one of the plan meetings, CB&I UK will seek the English court's approval of the plan at the upcoming Sanction Hearing. *Id.* ¶ 19; Schumann Decl. ¶ 9. Because certain Plan Creditors representing over 75% by value of each class of "financial" Plan Creditors have already undertaken to approve the plan pursuant to the Transaction Support Agreement, the approval by each of those creditor classes during its respective plan meeting is "likely to be a mere formality." Devaney Decl. ¶ 17.

restructuring plan.  Devaney Decl. ¶ 18(b); Schumann Decl. ¶ 6(b).  CB&I UK, with the support of the Ad Hoc Group, maintains that liquidation of CB&I UK—and subsequently McDermott and certain of its subsidiaries—is the "relevant alternative."  Schumann Decl. ¶¶ 7, 10; *see* Devaney Decl. ¶¶ 4, 54.  Conversely, Reficar submits that amendment of the restructuring plan is the "relevant alternative."  Devaney Decl. ¶ 54; Schumann Suppl. Decl. ¶ 11.  The English High Court must further satisfy itself that, *inter alia*, the classes were fairly represented at the Plan Meetings. Devaney Decl. ¶ 28.  If the Court approves CB&I UK's restructuring plan, the restructuring plan will become effective and bind all creditors, including Reficar.  Schumann Decl. ¶ 11.

### 2.    Proceedings in the Netherlands

Also in September 2023, CB&I N.V. initiated restructuring proceedings in the Netherlands. Vroom Decl. ¶¶ 2, 12.  On October 10, 2023, the Dutch court appointed, at Reficar's request, a restructuring expert for these proceedings.  *Id.* ¶ 13; *see also id.*, Exh A.

As background, under the Dutch Act on Confirmation of Extrajudicial Restructuring Plans (in Dutch: *Wet Homologatie Onderhands Akkoord*, and thus the "WHOA"), a debtor may offer a restructuring plan to its creditors and shareholders if it is reasonably likely that it will not be able to continue to pay debts imminently due.  Vroom Decl. ¶ 4.  Alternatively, certain stakeholders may request that the Dutch court instead appoint a restructuring expert with exclusive authority to offer a WHOA plan to the debtor's stakeholders on the debtor's behalf.  *Id.* ¶ 5.  Once a certain amount of support for the plan has been obtained, the offeror of the WHOA plan (either the debtor or the court-appointed restructuring expert) may ask the Dutch court to schedule a hearing and ratify the plan.  *Id.* ¶ 7.  But the Dutch court can refuse to ratify the WHOA plan if certain criteria are not met.  *Id.* ¶ 8; van den Berg Decl. ¶ 6.  For instance, a dissenting creditor that forms part of a dissenting class of creditors may not receive less value under the WHOA plan than it would receive according to its legal ranking or preference, unless there are reasonable grounds for such

deviation.  Vroom Decl. ¶ 8; van den Berg Decl. ¶ 6.  Furthermore, a dissenting creditor may not receive less value under the WHOA plan than it would have received in bankruptcy.  Vroom Decl. ¶ 8; van den Berg Decl. ¶ 6.

In the Dutch proceedings, the parties are presently engaged in a valuation protocol that was prepared by the restructuring expert, with Reficar's participation, and submitted to the Dutch court on November 14, 2023.  Van den Berg Decl. ¶ 9; *see* Vroom Decl. ¶¶ 22-26.  Under this protocol, CB&I N.V. is required to share data that the restructuring expert deems necessary to determine the liquidated and reorganization value of the McDermott Group.  Vroom Decl. ¶¶ 22-24.  It appears that a hearing on the restructuring expert's request for the Dutch court to enter an interim judgment on certain aspects of CB&I N.V.'s WHOA plan, including valuation assumptions underlying the plan, may be scheduled soon.  *Id.*  ¶ 32.

## II.  Procedural History

On November 28, 2023, Reficar filed an *ex parte* application pursuant to 28 U.S.C. § 1782 for leave to take discovery from Mason in connection with the CBI&I Entities' restructuring proceedings in England and the Netherlands.  Dkts. 2 ("Brief"), 8 ("Application").[4]  In connection with its application, Reficar attached a proposed document subpoena with twelve document requests spanning topics such as valuations of the CB&I Entities, the Transaction Support

---

[4] On November 22, 2023, Reficar inadvertently filed a Section 1782 application requesting discovery from The Baupost Group, L.L.C. (another member of the Ad Hoc Group).  Dkt. 1.  That same day, Reficar filed an amended application requesting discovery from Mason, Dkt. 7, but the filing was marked "deficient" by the Clerk's Office.  Reficar resubmitted its petition correctly on November 28, 2023.  Dkt. 8.  Reficar's application seeking discovery from The Baupost Group, L.L.C. is presently before the Honorable Indira Talwani in the United States District Court for the District Court of Massachusetts, and that action is stayed pending this Court's decision on the instant application.  *See In re Application of Refinería de Cartagena S.A.S. for an Order Directing Discovery from The Baupost Group, LLC Pursuant to 28 U.S.C. § 1782*, No. 23 Misc. 91609 (IT) (D. Mass), Dkt. 26 (joint stipulation and order regarding stay).

Agreement, and the Arbitration Award.  *See* Application, Appendix A at 10.  Reficar's original deposition subpoena also included twelve topics that mirrored the document requests.  *Id.* at 75. Reficar contended that this requested discovery will shed light on: (1) "whether Mason is primarily supportive of the Foreign Restructuring Proceedings to protect its equity investment in the McDermott Group"; (2) "Mason's assessment of the McDermott Group's enterprise value"; and (3) CB&I UK's position that "Mason and the Ad Hoc Group would act in a manner which may result in the bankruptcy of McDermott."  Brief at 7; Schumann Decl. ¶ 13; *see also* van den Berg Decl. ¶ 11.

On December 4, 2023, Mason requested leave to file an opposition to Reficar's application by December 18, 2023.  Dkt. 11.  The Court granted the request and further set a December 26, 2023 deadline for Reficar to submit any reply.  Dkt. 12.  That same day, Reficar urged the Court to require Mason to include in its opposition any objections to the scope of Reficar's proposed subpoenas, explaining the need for an expedited timeline in light of the Sanction Hearing scheduled to begin on February 8, 2024 in the English proceedings.  Dkt. 14.  Reficar also requested a hearing on its application no later than January 5, 2024, and further asked the Court, should it grant Reficar's application, to order Mason to comply with Reficar's document subpoena by January 12, 2024 and its deposition subpoena by January 17, 2024.  *Id.*  Mason agreed to those terms, Dkt. 16, and so the Court set the requested briefing schedule and scheduled a hearing on the application for January 5, 2024.  Dkt. 17.

On December 18, 2023, Mason submitted its opposition brief, in which it primarily argued that Reficar's discovery requests are unduly burdensome.  Dkt. 24 ("Opposition").  Specifically, Mason contended that Reficar's discovery requests encompass a substantial number of privileged documents and are only minimally relevant to the restructuring proceedings.  *See id.* at 13-24.

Mason further maintained that the requests are needlessly cumulative, given the extensive discovery undertaken before the foreign tribunals.  *Id.* at 24-25.

In its December 26, 2023 reply brief, Reficar—"in the spirit of good faith and cooperation, and taking into account certain arguments made by Mason in its opposition brief"—withdrew five of its requests (Requests 4, 8, 9, 11, and 12) and modified its first request (with modifications shown in the underlined text below), leaving the following requests:

- Request 1 ("Reply Request 1"): All documents related to any valuation placed on McDermott, CB&I UK and/or CB&I N.V. by Mason or its advisors or consultants if Mason or the Ad Hoc Group shared such valuation with McDermott, CB&I UK, or CB&I N.V. (including any officer or director of any of those companies).[5]

- Request 2 ("Reply Request 2"): All documents concerning the valuation placed on CB&I UK and/or CB&I N.V. by McDermott or its advisors or consultants, including Grant Thornton.[6]

- Request 3 ("Reply Request 3"): All documents concerning the Transaction Support Agreement entered into on September 8, 2023 between the Group,[7] the Ad Hoc Group, the Steering Committee,[8] and the other relevant stakeholders.

---

[5] In its Opposition, Mason argued "that the internal deliberations underlying a creditor's position in a restructuring proceeding are irrelevant and therefore not discoverable."  Opposition at 19 (citing *In re Washington Prime Grp.*, No. 21-31948 (Bankr. S.D. Tex. Aug. 5, 2021), Dkt. 774 at 7:25-8:5).  In its Reply, Reficar added the underlined language, justifying the relevance of its modified request by countering that "a creditor's assessment of the debtor's enterprise value is relevant and discoverable *if it was shared with the debtor*."  Dkt. 25 ("Reply") at 5-6 (emphasis added) (citing, *inter alia*, *In re Washington Prime Grp.*, No. 21-31948, Dkt. 774 at 7:2-7, 19:16-19).

[6] CB&I UK has engaged the accounting firm, Grant Thornton, to provide expert evidence in the restructuring proceedings in England.  Devaney Decl. ¶ 20.

[7] In this context, the "Group" refers to all the companies that are direct or indirect subsidiaries and/or parents of McDermott International, Ltd. (Bermuda).  *See* Reply, Appendix A at 5 (referring to paragraph 4.3 of the Practice Statement Letter issued by CB&I UK on September 8, 2023 for definition of "Group"), 19 (including paragraph 4.3 of the Practice Statement Letter to define the "Group").

[8] The "Steering Committee" refers to "a steering group comprising Crédit Agricole Corporate and Investment Bank, in its capacity as LC Administrative Agent . . . under certain of the Group's letter of credit facilities and certain other lenders and issuers to the Group's credit

- Request 5 ("Reply Request 4"): All documents concerning CB&I UK's proposed Relevant Alternative and the conclusion that returns to the creditors in the Relevant Alternative would be materially worse than the return available to plan creditors through the restructuring.

- Request 6 ("Reply Request 5"): All documents concerning the impact of the Arbitration Award on Mason and the funds it advises.

- Request 7 ("Reply Request 6"): All correspondence within Mason (internally) or between Mason and a member of the Ad Hoc Group (or their advisors) relating to Reficar and/or the Arbitration Award.

- Request 10 ("Reply Request 7"): All documents evidencing any plan for McDermott to pursue an Initial Public Offering.[9]

Reply at 1-2; *see also id.*, Appendix A at 10.  Reficar also made the corresponding changes to the twelve "Areas of Designation and Inquiry" in its deposition subpoena.  Reply at 2; *see also id.*, Appendix A at 75.  In response to Mason's broader objections, Reficar delineated categories of documents that purportedly fall outside of the attorney-client and work product privileges, and it reemphasized the relevance of its requested discovery.  Reply at 2-8.

On January 3, 2024, the Court granted Mason's request for to file a sur-reply, which Mason filed that same day.  *See* Dkts. 28, 29, 30 ("Sur-Reply").  In its Sur-Reply, Mason maintained that Reficar's application should be denied in full because Reficar's modifications to its subpoenas fail to cure the previously identified defects.  *See generally* Sur-Reply.

On January 5, 2024, the Court heard arguments on Reficar's application.  Dkt. 34 ("Jan. 5, 2024 Hr'g Tr.").  At the conclusion of the arguments, the parties agreed to meet and confer to

---

facilities."  *See* Reply, Appendix A at 5 (referring to paragraph 5.7 of the Practice Statement Letter issued by CB&I UK on September 8, 2023, for definition of "Steering Committee"), 93 (including paragraph 5.7 of the Practice Statement Letter).

[9] The "Initial Public Offering" refers to "the potential initial public offering (IPO) contemplated by McDermott as reported in [an appended] article dated July 10, 2022."  Reply, Appendix A at 5.

determine whether they could agree on a narrowed category of requests.  *Id.* at 38:10-18.  Later

that evening, the parties informed the Court that they were unable to reach an agreement, and thus

set forth their respective proposals for the requested discovery.  Dkt. 33 ("Post-Argument Letter").

### III.  Legal Standard

Section 1782 provides that:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal. . . .  The order may be
> made . . . upon the application of any interested person and may direct that the
> testimony or statement be given, or the document or other thing be produced, before
> a person appointed by the court. . . .  A person may not be compelled to give his
> testimony or statement or to produce a document or other thing in violation of any
> legally applicable privilege.

28 U.S.C. § 1782(a).  Pursuant to the statute, a district court is authorized to grant a Section 1782

request where: "(1) the person from whom discovery is sought resides (or is found) in the district

of the district court to which the application is made, (2) the discovery is for use in a foreign

proceeding before a foreign tribunal, and (3) the application is made by a foreign or international

tribunal or any interested person."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d

76, 80 (2d Cir. 2012).

If these statutory requirements are met, a court then assesses whether it should exercise its

discretion to grant the requested assistance in light of the following factors set out by the Supreme

Court in *Intel Corp. v. Advanced Micro Device*s: (1) whether "the person from whom discovery is

sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the

character of the proceedings underway abroad, and the receptivity of the foreign government or

the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a)

request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of

a foreign country or the United States"; and (4) whether the request is "unduly intrusive or

burdensome." 542 U.S. 241, 264-65 (2004).  In deciding whether to exercise its discretion to grant a Section 1782 application, a court considers the "twin aims" of Section 1782: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)).

For purposes of the instant decision, the Court considers Reficar's Reply Requests in assessing whether Reficar has met the statutory requirements under Section 1782.  The Court discusses the parties' post-argument proposals only in assessing the document requests' breadth and scope under the fourth *Intel* factor.

## IV.  Discussion

### A.    Statutory Requirements Under Section 1782

The first and third statutory requirements are plainly satisfied here.  First, Mason maintains its principal place of business in this District, Stenglein Decl. ¶ 13; *see id.*, Exh. 1, and is thus "found" in this District.   *See In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018), *aff'd sub nom. In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).  And Reficar, which has actively participated in the English and Dutch proceedings to challenge the proposed restructuring plans under which the CB&I Entities would be discharged from potentially over $1 billion owed to Reficar under the Arbitration Award, undoubtedly qualifies as an "interested person" in those proceedings.  *See Intel*, 542 U.S. at 256-57 (explaining that an "interested person" under Section 1782 includes someone with "participation" or procedural rights, who "possess[es] a reasonable interest in obtaining [judicial] assistance" (alterations in original, citation omitted)).  Mason does, however, argue that Reficar has failed to demonstrate the relevance of its requested discovery

and has thus failed to meet the statute's "for use" requirement.  Opposition at 17.  The Court disagrees.

The "for use" requirement of Section 1782 mandates that the discovery sought "be employed with some advantage or serve some use in the [foreign] proceeding."  *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).  The term "for use" is afforded a "broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction."  *Deposit Ins. Agency v. Leontiev*, No. 17 Misc. 414 (GBD) (SN), 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (internal citations omitted).  Nor does the applicant need to demonstrate that the requested discovery is "something without which the applicant could not prevail" in the foreign proceeding.  *Mees*, 793 F.3d at 298.  Indeed, such a "necessity requirement" would "entail a painstaking analysis not only of the evidence already available to the applicant, but also of the amount of evidence required to prevail in the foreign proceeding"—an inquiry "fraught with danger" to the extent it requires the analysis and interpretation of foreign law.  *Id.* at 298-99 ("We have previously rejected similarly speculative forays into legal territories unfamiliar to federal judges, because such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the twin aims of the statute." (internal quotation marks and alterations omitted)).

Still, it may be necessary for a court to determine the threshold relevance of the materials "sought insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding."  *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 n.7 (2d Cir. 2015).  An applicant otherwise need only show that the requested materials "can be made use of in the foreign proceeding to increase [the applicant's] chances of success."  *Mees*, 793 F.3d at 299.  The burden imposed on the applicant

14

in this regard is *de minimis*. *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 175 (S.D.N.Y. 2020); *see also In re Kingstown Partners Master Ltd.*, No. 21 Misc. 691 (LTS), 2022 WL 1081333, at *5 (S.D.N.Y. Apr. 8, 2022) (noting that the "for use" requirement is satisfied if "the materials sought are 'to be used at some stage of a foreign proceeding'" (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017))).

The Court finds that Reficar has sustained its burden under the statute's "for use" requirement. Reficar's seven document requests (and corresponding areas of designation and inquiry in its deposition requests), as described in its Reply, fall into three categories: (1) information related to Mason's reasons for supporting the proposed restructuring plans; (2) information related to the McDermott Group's enterprise value; and (3) information related to Mason's position that the "relevant alternative" would be a "free-fall" bankruptcy of the McDermott Group. Opposition 18-24; Reply 5-8. Reficar represents that it intends to use these materials to challenge the restructuring plans and underlying valuation analyses submitted by the CB&I Entities in the English and Dutch proceedings. Brief at 6-7, 9-10. Indeed, Reficar's request for an expedited briefing scheduled was premised expressly on its "need to obtain the requested from Mason not later than January 18, 2024, in order to be able to use it in the English proceedings." *See* Dkt. 14 at 1. Moreover, Reficar has provided supporting affidavits from Patrick Schumann (an English solicitor with more than fourteen years of experience in restructuring and insolvency) and Sebastian van den Berg (a Dutch attorney-at-law with over thirteen years of experience in corporate restructuring and insolvency in the Netherlands), who each declare, under the penalty of perjury, that the requested materials are relevant to key issues in the English and Dutch restructuring proceedings. *See* Brief at 7; Schumann Decl. ¶¶ 1, 13; van den Berg Decl. ¶¶ 1, 11.

As to the first category of requests, Reficar seeks "all documents concerning the Transaction Support Agreement" (Reply Request 3), "all documents concerning the impact of the Arbitration Award on Mason and the funds it advises" (Reply Request 5), and all internal correspondence and correspondence between Mason and a member of the Ad Hoc Group related to Reficar and/or the Arbitration Award (Reply Request 6).  Reply at 6-7.  According to Mr. Schumann, this information, which concerns Mason's motives for supporting the proposed restructuring plans, may allow Reficar to challenge the composition of one or more of the creditor classes in the English proceedings.  Schumann Suppl. Decl. ¶ 7.  And if the English High Court finds that one or more classes were not properly constituted, it may then refuse to approve the restructuring plan.  *Id.*

As to the second category of requests, Reficar seeks documents concerning Mason's and the Ad Hoc Group's assessments of the McDermott Group's enterprise value that were shared with the McDermott Group (Reply Request 1), as well as documents concerning the valuation placed on the CB&I Entities by McDermott or its advisors or consultants (Reply Request 2).  Reply at 5-6.  According to Messrs. Schumann and van den Berg, this information may assist Reficar in cross-examining CB&I UK's valuation expert in the English proceedings and in challenging CB&I's valuation analysis at the upcoming Valuation Hearing in the Dutch proceedings.  Schumann Suppl. Decl. ¶ 9; van den Berg Suppl. Decl. ¶ 11.

Finally, as to the third category, Reficar seeks all documents concerning CB&I UK's proposed "relevant alternative" (Reply Request 4) and all documents evidencing any plan for McDermott to pursue an Initial Public Offering (Reply Request 7).  According to Mr. Schumann, these materials may assist Reficar in challenging the Ad Hoc Group's position that a "free-fall" bankruptcy is the most likely outcome if CB&I UK's proposed restructuring plan is not approved,

and may bolster Reficar's own position that the more likely alternative outcome is Mason and the other secured creditors renegotiating the plan.  Schumann Suppl. Decl. ¶ 11.

In light of the above showing, the Court finds unpersuasive Mason's suggestion that Reficar's requested discovery is "plainly irrelevant to the foreign proceeding[s]."  *See* Opposition at 17 (citation omitted).  Otherwise, Mason's substantive arguments are aimed almost exclusively at the proportionality of Reficar's requests: Mason argues throughout its Opposition that Reficar "has not demonstrated a need" for its requested discovery, that the requested information encompasses privileged documents of minimal probative value, and that Reficar's requests are needlessly cumulative and unduly burdensome.  *See* Opposition at 13-24.  Mason's Sur-Reply, which responds directly to Reficar's updated request, reiterates these concerns.  *See* Sur-Reply at 2-4.  But these arguments are more appropriately considered under the fourth *Intel* factor.  *See In re Caterpillar Creditor, Sociedad Anonima de Capital Variable, Sociedad Financiera de Objeto Multiple, Entidad Regulada*, No. 22 Misc. 273 (JGK), 2023 WL 6938264, at *3 (S.D.N.Y. Oct. 20, 2023) (explaining that the "for use" requirement does not "demand a showing of proportionality").

The Court thus finds that each of the statutory requirements has been met, and so proceeds to consider the four *Intel* factors.

**B.  Discretionary *Intel* Factors**

**1.  Whether the Requested Discovery is Available in the Foreign Proceedings**

The first *Intel* factor provides that "when the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264. Here, Reficar acknowledges that Mason is actively involved in the foreign proceedings, and Mason

emphasizes that is has consented to the jurisdiction of the foreign tribunals.  Brief at 1; *see also* Opposition at 25 ("Mason <u>is</u> present in both the English and Dutch proceedings, has consented to the jurisdiction of the English and Dutch courts under the [Transaction Support Agreement], and discovery <u>can</u> be sought in those courts, and indeed, has been.").  But, as Reficar maintains, the relevant inquiry under this factor "is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application." *In re Porsche Automobil Holding SE*, No. 15 Misc. 417 (LAK), 2016 WL 702327, at *7 (S.D.N.Y. Feb. 18, 2016).  The parties dispute whether Mason is within the jurisdictional reach of the foreign courts for purposes of ordering document production, and offer competing perspectives from their respective English and Dutch law experts.

In support of Reficar's position, Mr. Schumann asserts that the requested discovery "is probably not within the jurisdictional reach of the English court" because Mason is not a standalone party in those proceedings, but rather participates in those proceedings as a member of the Ad Hoc Group.  Schumann Decl. ¶ 16.  He further explains that the available procedures in the proceedings currently allow Reficar to seek information only from the CB&I Entities.  *Id.* According to Mr. Schumann, Reficar would need to initiate a separate disclosure application against Mason, and likely would not be able to secure the requested documents in time for the Sanction Hearing.  *Id.*  Finally, he states that, in any event, court-ordered disclosure in England is likely to be narrower than in the United States, Schumann Suppl. Decl. ¶ 4, and that English law lacks a procedural mechanism for taking oral evidence before hearings, Schumann Decl. ¶ 16.  Mr. van den Berg similarly opines that he does "not believe that Reficar's requested discovery from Mason is within the jurisdictional reach of the Dutch court" because the procedures in those proceedings provide for the court-appointed restructuring expert to collect information only from

18

CB&I N.V.  Van den Berg Decl. ¶ 12.  Mr. van den Berg adds that, even were Reficar to initiate a new discovery application against Mason, the Dutch court would likely not have jurisdiction to order the requested discovery because Mason is not located in the Netherlands.  *Id.*  And, finally, he emphasizes that the scope of disclosure in the Netherlands "would be significantly narrower as compared to discovery" in the United States.  Van den Berg Suppl. Decl. ¶ 14.

In support of Mason's position, Mr. Devaney, an English solicitor and partner at Weil, Gotshal & Manges (London) with over nineteen years of experience in insolvency and restructuring, counters that the English court could "make a disclosure order against Mason on the basis that Mason is, or is to be treated, as a party to the English Proceedings."  Devaney Decl. ¶¶ 1, 38.  Mr. Devaney further explains that, even if Mason were not formally joined as a party in those proceedings, English procedural rules provide for disclosure by nonparties where: "(a) the documents of which disclosure is sought are likely to support the case of the applicant or adversely affect the case of one of the other parties to the proceedings and (b) disclosure is necessary in order to dispose fairly of the claim or to save costs."  *Id.* ¶ 38.  Mr. Vroom, an attorney-at-law and partner at Loyens & Loeff N.V. with over twenty years of experience in insolvency and restructuring, explains that Reficar has available to it procedural mechanisms outside of the WHOA proceedings that could allow a Dutch court to order discovery from a third party and that such request would "not be determined solely based on the location of the party to whom the request is directed."  Vroom Decl. ¶¶ 1, 36, 37.

Mason's and Reficar's positions are not irreconcilable.  The experts appear to agree that in both actions, Reficar can conceivably request documents through available procedural mechanisms for requesting production of evidence from third parties.  Mason's experts emphasize that whether the foreign court grants such a request turns on the relevant jurisdiction's procedural

rules. And Reficar's experts opine that any such request is unlikely to be granted, considering the purported jurisdictional hurdles, as well as the foreign jurisdictions' comparatively narrower approaches to discovery.

Where, as here, the Section 1782 respondent is not a direct party in the foreign proceeding, courts in this District have found insufficient bare representations that the Section 1782 applicant could hypothetically obtain the requested materials through third-party disclosure mechanisms. For instance, in *In re Polygon Global Partner LLP*, the Court explained that "the mere possibility that [the respondent] could, at some point, be subject to a third-party discovery provision in Spain" was "too attenuated a connection to the Spanish proceedings to significantly weigh in its favor under this factor." No. 21 Misc. 364 (ER), 2021 WL 2117397, *8 (S.D.N.Y. May 25, 2021) (citing *Intel*, 542 U.S. at 264). There, the court declined to "assess how the [Spanish] High Court might hypothetically apply its third-party discovery rules" and concluded that the first *Intel* factor weighed in favor of the applicant. *Id.* Similarly, in *In re Porsche Automobil Holding SE*, the court found unpersuasive the respondent's argument that the applicant "may be able to obtain" the requested materials "at some point in the German action because Germany requires some disclosure," given that the respondent offered "no evidence concerning how long this process takes" and because there was "no indication that the disclosures would be sufficiently broad to give [the applicant]" the information sought in its Section 1782 application. No. 15 Misc. 417 (LAK), 2016 WL 702327, at *8 (S.D.N.Y. Feb. 18, 2016).

Here, although Mason has identified procedures through which Reficar *could* request the documents it seeks in its instant application, it has not countered Reficar's position that Reficar is unlikely to succeed in obtaining the requested discovery through those mechanisms. In fact, Mason appears to recognize that the requested discovery requests would likely be denied in the

foreign proceeding—as evidenced by the English court's rejection of an application for disclosure against CB&I UK by another opposing creditor, Devaney Decl. ¶¶ 39-41, and the Dutch court's rejection of Reficar's own request for additional disclosures from CB&I N.V., Vroom Decl. ¶ 13(ii).  *See* Opposition at 11 ("Reficar could utilize the same discovery mechanisms against Mason that it and other dissenting creditors have already tried to use in English and Dutch Courts.").

Accordingly, the Court finds that the first *Intel* factor favors Reficar.

### 2.   Whether the English and Dutch Courts Are Receptive to Section 1782 Discovery

The second *Intel* factor provides that a district court ruling on a Section 1782 application may consider "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."  *Intel*, 542 U.S. at 264.  "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery based on a lack of receptiveness only where it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782."  *Id.* at 1100.

Here, Mason does not challenge Reficar's contention that Dutch and English courts are generally receptive to assistance under Section 1782, Brief at 13-24, and offers no "authoritative proof" that either tribunal would reject the requested discovery.  The Court thus finds that this factor weighs in favor of Reficar.  *See In re Gorsoan Ltd.*, No. 13 Misc. 397 (PGG), 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) (noting that "the party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal").

### 3. Whether the Request is an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The third *Intel* factor seeks to curtail "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Section 1782, however, does not limit a district court's authority to require the production of documents "to materials that could be discovered in the foreign jurisdiction if the materials were located there." *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (quoting *Intel*, 542 U.S. at 260). Rather, "[p]roof-gathering restrictions are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees*, 793 F.3d at 303 n. 20 (emphasis and internal quotation marks omitted); *see also In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251-52 (2d Cir. 2019) (affirming district court's grant of a Section 1782(a) application where the applicants admitted they could not obtain the evidence sought in the foreign proceedings, but the respondent had not made "any showing that the policy or restrictions of any relevant foreign jurisdiction prohibit[ed] the discovery sought" (emphasis omitted)). Accordingly, "to demonstrate circumvention, [a respondent] must illustrate . . . that [the applicant is] engaged in a bad faith endeavor to misuse Section 1782." *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d at 251.

Here, Reficar asserts that neither the English nor Dutch courts have "proof-gathering restrictions" prohibiting the discovery it seeks from Mason. Schumann Decl. ¶ 17; van den Berg Decl. ¶ 14. And Mason does not argue otherwise. Nor does Mason contend that Reficar has made its Section 1782 application in bad faith. Indeed, the Court discerns no indication of any ulterior motive on Reficar's part for seeking its discovery. Reficar appears to have a good faith basis for

believing that it will be able to use the evidence in the restructuring proceeding, *see* van den Berg Decl. ¶ 13, and, in responding to Mason's objections, it has substantially narrowed it requests on its own accord, *see* Reply at 1-2.

The Court thus finds that this favor also weighs in favor of Reficar.

### 4.   Whether the Request is Unduly Intrusive or Burdensome

The parties' dispute centers on the final *Intel* factor, which directs courts to be mindful of overly intrusive or burdensome discovery requests. *Intel*, 542 U.S. at 265. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure," *Mees*, 793 F.3d at 302, which includes consideration of the probative value of the materials sought, *In re Okean B.V. & Logistic Solution Int'l*, 60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014) (denying a Section 1782 application where production of the materials would be intrusive and burdensome and the "probative value . . . [was] conjectural at best"). The determination of whether a subpoena creates an undue burden further "depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (internal quotation marks omitted).

In the Section 1782 context, where the "substantive issues presented in the foreign litigation are to be decided by a foreign court applying unfamiliar foreign law," a district court should "be permissive when assessing relevance." *In re Tiberius Group AG*, No. 19 Misc. 467 (VSB), 2020 WL 1140784, at *7 (S.D.N.Y, Mar. 6, 2020) (internal quotation marks omitted); *accord In re Christen Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) ("Further, because the Court is

called upon only to resolve a discovery issue that arises from underlying litigation in foreign jurisdictions, the court should be particularly wary of denying discovery on relevance grounds."); *cf. Euromepa*, 51 F.3d at 1099 ("We think that it is unwise—as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law.").  And where a court finds a Section 1782 discovery request to be overbroad, it should first "consider whether that defect could be cured through a limited grant of discovery" before denying the application outright.  *Mees*, 793 F.3d at 302; *see also Euromepa*, 51 F.3d at 1101 ("[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright.").

Turning to the instant matter, the Court finds that any doubt as to the relevance or probative value of the requested discovery, as weighed against the burden it poses, is insufficient to deny Reficar's application outright.  *See supra* IV.A.  In balancing the probative value of the requested materials against the privilege- and burden-related concerns raised by Mason, the Court instead exercises its broad discretion to narrow the breadth and scope of Reficar's requests.  *See Malev Hungarian Airlines v. United Techs. Int'l Inc.*, 964 F.2d 97, 102 (2d Cir. 1992) (noting that Section 1782 and Federal Rule of Civil Procedure 26 provide a district court with broad discretion to impose reasonable limitations upon discovery).

As indicated at *supra* II, Reficar has modified its discovery requests since it filed its original petition, and the parties have offered arguments tailored to each version of Reficar's requests.  Given the many developments that have arisen during the brief lifespan of this litigation, for

purposes of context and clarity, the Court summarizes the parties' positions at each successive stage of the instant proceeding.

To start, in opposing Reficar's initial requests, Mason argued that the materials sought are of minimal relevance to the restructuring proceedings, that substantially all the materials encompassed by the requests are privileged, and that Reficar seeks needlessly cumulative materials, considering the "extensive discovery" Reficar already obtained from McDermott in the foreign proceedings. Opposition at 13-25. In response, Reficar modified its subpoenas by withdrawing five requests (and corresponding areas of inquiry and designation) altogether and qualifying its first request. Reply at 1-2. Reficar retained the start date for the requested information as June 30, 2020. *See id.*, Appendix A at 7. Once again, the Reply Requests are:

- Reply Request 1: All documents related to any valuation placed on McDermott, CB&I UK and/or CB&I N.V. by Mason or its advisors or consultants if Mason or the Ad Hoc Group shared such valuation with McDermott, CB&I UK, or CB&I N.V. (including any officer or director of any of those companies).

- Reply Request 2: All documents concerning the valuation placed on CB&I UK and/or CB&I N.V. by McDermott or its advisors or consultants, including Grant Thornton.

- Reply Request 3: All documents concerning the Transaction Support Agreement entered into on September 8, 2023 between the Group, the Ad Hoc Group, the Steering Committee, and the other relevant stakeholders.

- Reply Request 4: All documents concerning CB&I UK's proposed Relevant Alternative and the conclusion that returns to the creditors in the Relevant Alternative would be materially worse than the return available to plan creditors through the restructuring.

- Reply Request 5: All documents concerning the impact of the Arbitration Award on Mason and the funds it advises.

- Reply Request 6: All correspondence within Mason (internally) or between Mason and a member of the Ad Hoc Group (or their advisors) relating to Reficar and/or the Arbitration Award.

- Reply Request 7: All documents evidencing any plan for McDermott to pursue an Initial Public Offering.

Reply at 1-2; *see also id.*, Appendix A at 10.  Significantly, among the *withdrawn* requests was Request 11:

> Documents evidencing Mason's financial or accounting treatment of performance guarantee letters of credit issued in connection with construction projects of McDermott and other similarly situated entities.

*See* Application, Appendix A at 10.  In its Reply, Reficar also countered that attorney-client and work product privileges would not apply to the following categories of information:

1. Documents created or received by Mason from June 30, 2020 (the beginning of the date range covered by Reficar's subpoenas) to early May 2023 (the period when the Ad Hoc Group began considering initiating the foreign restructuring proceedings);

2. Documents exchanged between the Ad Hoc Group and the McDermott Group or any of the McDermott Group's other creditors before September 8, 2023 (before which date any disclosure among these parties constitutes waiver of privilege); and

3. Documents exchanged between the Ad Hoc Group and certain other creditors of the McDermott Group since September 8, 2023.

Reply at 2-5.  Reficar did not expressly indicate in its Reply its willingness to narrow its requests according to those time constraints, however.

In its Sur-Reply, Mason reiterated its primary objection that "entire categories of the information [Reficar] seeks are likely to be privileged and/or work product."  Sur-Reply at 1.  In addition, Mason argued that Reficar's request for valuation-related materials (Reply Requests 1 and 2), as well Reficar's requests regarding the Transaction Support Agreement and Arbitration Award (Reply Requests 3, 5, and 6) encompass materials that Reficar could have requested from McDermott.  Sur-Reply at 1-3.  Next, Mason argued that its internal views on the terms of the Transaction Support Agreement or the Arbitration Award (Reply Requests 3, 5, and 6) have no

bearing on the question of class composition in the English proceedings, and that Reficar has "all it needs to make its argument" regarding the class composition in the English proceedings because it has evidence of the Ad Hoc Group's secured debt and equity holdings. *Id.* at 3-4. Finally, Mason contended that Reply Requests 4 and 7 (for information related CB&I UK's proposed relevant alternative and all documents concerning any plan for McDermott to pursue an initial public offering) are "pure fishing expeditions" insofar as Reficar claims that this information will shed light on what other creditors will do if the restructuring plans are not approved. *Id.* at 4-5.

At oral argument, Reficar characterized its remaining discovery requests as "revolv[ing] around three buckets": (1) "the asset valuation that has been put forward in the UK" by CB&I UK's valuation expert, (2) how letters of credit should be treated, and (3) what the true relevant alternative is. Jan. 5, 2024 Hr'g Tr. at 8:3-9:13. Reficar insisted that the relevance of each of these three categories of materials outweighed any burden claimed by Mason. *See, e.g.*, *id.* at 38:1-9. Mason, on the other hand, explained that it "believe[d] that the letter of credit requests ha[d] been dropped so . . . we are left with" two buckets, *id.* at 28:13-15, and highlighted its concerns regarding the sheer quantity of privileged materials encompassed by the requests, even as modified, *id.* at 28:7-35:5. Mason separately objected to Reficar's deposition subpoena, urging that the deposition would be "extraordinarily burdensome," especially in light of the "work product and the privilege issues that are inherent to [Reficar's] requests." *Id.* at 38:20-39:4. As mentioned, the parties agreed to meet and confer after the argument to determine whether they could agree on a few request categories with modified time frames. *Id.* at 38:10-18. Although Mason requested that the Court limit the negotiations to only the document requests, the Court asked the parties to include Reficar's deposition subpoena in their discussions. *Id.* at 39:2-4, 41:6-9. Ultimately, the

parties were unable to reach an agreement on a narrowed set of discovery requests, and so they instead relayed their competing proposals.  Post-Argument Letter at 1-3.

In the Post-Argument Letter, Reficar explained that it proposed three document request categories, each going from June 1, 2022, through the present:

1. All non-privileged and non-work product documents related to any valuation placed on McDermott, CB&I UK and/or CB&I N.V. by Mason or its advisors or consultants.

2. All non-privileged and non-work product documents related to financial treatment of performance letters of credit by Mason or its advisors or consultants.

3. All non-privileged and non-work product documents concerning CB&I UK's proposed Relevant Alternative, including documents regarding consideration of options other than the Plan Company's Proposed Plan or the Relevant Alternative.

*Id.* at 1.  Reficar further conveyed its proposal to limit the deposition to four hours with areas of inquiry corresponding to the above categories, along with a fourth category for "[i]nformation concerning all of the documents that are produced by Mason in response to Reficar's document subpoena."  *Id.* at 2.

On the other hand, Mason contended in the Post-Argument Letter that Reficar's latest proposals "substantially expand" Reply Requests 1, 2, and 4.  *Id.*  Mason further presented its alternative proposal "that it produce any documents that are not privileged, work product, or subject to any other immunity from production" that are encompassed by the following categories:

1. From June 1, 2022 to September 7, 2023 responsive to Reficar's Reply Requests 1 and 2.[10]

---

[10] With respect to this first category, Mason contended in the Post-Argument Letter: "Documents on those subjects beginning on September 8, 2023 shared between Mason and McDermott on valuation are protected by common interest."  Post-Argument Letter at 2.

2.  From September 8, 2023 (the date on which CB&I UK filed the UK restructuring proceeding where Relevant Alternative was put in issue), all documents responsive to Reply Request 4.

*Id.* Mason maintained its objection to the proposed deposition subpoena, adding its view that Reficar is attempting to use the deposition to obtain "what is effectively expert testimony on valuation," even though both Reficar and McDermott have already submitted expert reports and testimony in the foreign proceedings. *Id.* at 2-3.

Having considered the parties' evolving arguments, proposals, and objections, the Court modifies the subpoenas as follows. First, Reficar is granted leave to serve a document subpoena on Mason for the following categories of information:

1.  From June 1, 2022 to September 7, 2023, all non-privileged information related to any valuation placed on McDermott, CB&I UK, and/or CB&I by Mason or its advisors or consultants, if Mason or the Ad Hoc Group shared such valuation with McDermott, CB&I UK, or CB&I N.V. (including any officer or director of any of those companies).

2.  From June 1, 2022 to the present, all non-privileged information concerning CB&I UK's proposed Relevant Alternative, including documents regarding consideration of options other than the Plan Company's Proposed Plan or the Relevant Alternative.

Second, Reficar is granted leave to serve a subpoena on Mason for a deposition limited to four hours on the following categories of information:

1.  From June 1, 2022 to September 7, 2023, all non-privileged information related to any valuation placed on McDermott, CB&I UK, and/or CB&I by Mason or its advisors or consultants, if Mason or the Ad Hoc Group shared such valuation with McDermott, CB&I, UK or CB&I N.V. (including any officer or director of any of those companies).

2.  From June 1, 2022 to the present, all non-privileged information concerning CB&I UK's proposed Relevant Alternative, including documents regarding consideration of options other than the Plan Company's Proposed Plan or the Relevant Alternative.

3.  Information concerning all of the documents that are produced by Mason in response to Reficar's document subpoena.

As modified by the Court, the first category reflects the substantive limitation that Reficar's Reply added to Request 1, ostensibly in recognition that "a creditor's assessment of the debtor's enterprise value is relevant and discoverable if it was shared with the debtor."  Reply at 5 (emphasis removed).  The Court sees no reason to remove that limitation at this stage.  Moreover, the Court agrees with Mason that since September 8, 2023, materials falling in this category are very likely to be shielded by work product or attorney-client privilege—given that the restructuring proceedings, in which the McDermott Group's enterprise value is directly as issue, were initiated on that date, and that the Transaction Support Agreement was executed by the Ad Hoc Group Members and the McDermott Group on that same date, such that any disclosures among them would no longer constitute waiver of any privilege.  *Cf. In re Velo Holdings Inc.*, 473 B.R. 509, 515-18 (Bankr. S.D.N.Y. 2012) (explaining that the debtor and the agent of the first lien lenders had a "common legal interest with regard to restructuring proposals" after the date when they "entered into a Protocol outlining the terms of a proposed restructuring").  To the extent that Mason remains concerned about the disclosure of commercially sensitive information, *see* Opposition at 21; Martino Decl. ¶ 9, that issue can be addressed with an appropriate protective order.  *Cf. In re The City of New York*, 607 F.3d 923, 935 (2d Cir. 2010) (observing that "[t]he disclosure of confidential information on an 'attorney's eyes only' basis is a routine feature of civil litigation involving trade secrets" (citing Fed. R. Civ. P. 26(c)(1)(G))).

The Court recognizes that the second category of information, as proposed by Reficar and as adopted by the Court, may also encompass a significant portion of privileged materials.  But the time constraint proposed by Mason (*i.e.*, only those documents from September 8, 2023 to the present) risks excluding potentially relevant and probative information.  For instance, at oral argument, counsel for Reficar represented that "there are public reports in 2022 that McDermott

was considering an IPO," and "that goes directly, in [Reficar's] view, to what the relevant alternative is." Jan. 5, 2024 Hr'g Tr. at 17:17-18:8. The Court further notes that Mason has not provided an estimate of the volume of discovery anticipated by the Reply Requests, making it difficult for the Court to assess the precise burden Mason bears in reviewing this single category of materials. *Id.* at 27:23-25. Finally, the Court has moved the start date for the requested materials from June 30, 2020 to June 1, 2022 (in accordance with Reficar's most recent proposal), presumably alleviating some of the burden claimed by Mason. Considering all these factors, the Court finds that this category of requests is, on balance, justified.

Next, as evident from the Court's modifications above, the Court declines to add Reficar's proposed category for "[a]ll non-privileged and non-work product documents related to financial treatment of performance letters of credit by Mason or its advisors or consultants." Post-Argument Letter at 1. This request is simply a broader reformulation of Request 11, which Reficar expressly withdrew in its Reply. *See* Reply at 2. And whereas the Court found Reficar's representations in its Reply (supported by the original and supplemental affidavits from Messrs. Schumann and van den Berg) as to the relevance of Reply Requests 1, 2, 3, 5, 6, 7, and 10 sufficient to demonstrate the relevance of the requested discovery, *supra* IV.A, Reficar did not make a similar showing for the requests it withdrew, including Request 11. *Cf.* Opposition at 12 (Mason criticizing Reficar's opening brief for "mak[ing] no attempt to explain how each of the [twelve original] requests relate to its three categories" of purportedly relevant information).[11]

---

[11] To the extent that information concerning the letters of credit falls within the first category of requests—*i.e.*, valuation information shared with the CB&I Entities—with the time-based and substantive limitations set by the Court, Reficar may well be entitled to those materials. *Cf.* Jan. 5, 2024 Hr'g Tr. at 36:11-13 (counsel for Reficar asserting that "the letters of credit are directly on the table as part of the going concern valuation of McDermott"). But because Reficar did not elaborate on the relevance of each of its requests in its opening brief, and because it

Finally, the Court finds that limiting the deposition to four hours, particularly in light of the Court's modifications to the areas of designation and inquiry, adequately addresses any concern Mason may have with the burden of preparing its witness for the deposition on a tight timeframe.

## V. Conclusion

For the foregoing reasons, the Court grants Reficar's application in part. The subpoenas in the form attached to Reficar's application are quashed, and the Court grants Reficar leave to serve its document and deposition subpoenas as modified by the Court in this Opinion. Mason is ordered to comply with the document subpoena by January 12, 2024 and with the deposition subpoena by January 17, 2024. Furthermore, the parties are directed to notify the Court when the deposition is scheduled to take place, so the Court can endeavor to make itself available in the event disputes arise during the deposition that require the Court's resolution. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 8.

SO ORDERED.

Dated: January 8, 2024
New York, New York

_____
JOHN P. CRONAN
United States District Judges

---

withdrew its specific request as to the letters of credit in its Reply, the Court lacks the benefit of a full and complete response from Mason on this issue. Should the parties find themselves unable to agree on what materials fall under the categories set forth in this Opinion, they may raise the issue with the Court after a meet-and-confer process to attempt to resolve the dispute.